UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM S. COOPER,

   Plaintiff,

v.                                                                                         Case No. 16-12969

PORTFOLIO RECOVERY ASSOCIATES, LLC,         HON. AVERN COHN

   Defendant.

_____/

**<u>MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, (Doc. 9) AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. 19)</u>**

## I.    INTRODUCTION

This is a Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, case. Plaintiff William Cooper ("Cooper"), a Michigan resident, is suing Defendant Portfolio Recovery Associates, LLC ("PRA"), a Virginia company, for attempting to collect a debt from him in a manner that violated the FDCPA, the Michigan Occupational Code ("MOC"), M.C.L. §339.915(e), the Michigan Collection Practices Act ("MCPA"), M.C.L. § 445.251 *et seq.*, and Michigan tort law. Cooper seeks actual damages, FDCPA statutory damages of $1000, the greater of MOC treble damages or $150, damages for fraud, costs and attorney's fees, and punitive damages in excess of $10,000,000.

PRA has moved for summary judgment or dismissal (Doc. 9), to which Cooper has responded and cross-motioned for summary judgment on liability (Doc. 19). Along

with its motion for summary judgment, PRA filed a statement of material facts not in dispute (Doc. 10). Cooper did not file a response statement of facts, so PRA independently filed a joint statement of material facts not in dispute (Doc. 22). This document does not represent a concurrence between the parties, but only reflects the facts that PRA says Cooper did not refute in his other papers. Just before oral argument, Cooper filed a response statement of facts (Doc. 26).

For the reasons that follow, PRA's motion for summary judgment is GRANTED, and Cooper's motion for summary judgment is DENIED.

## II. BACKGROUND

### A. Initial Contact and First Verification Request

On July 13, 2015, Cooper received a debt collection letter from PRA indicating that Cooper owed $3,177.19 to PRA (Doc. 1, Exhibit 1). The letter named U.S. Bank National Association ("U.S. Bank") as the original creditor. Cooper wrote to PRA in response requesting that PRA verify the debt through various means, including by providing a copy of the written agreement that created the obligation between Cooper and U.S. Bank (Doc. 1, Exhibit 2).

On August 10, 2015, PRA responded to Cooper by letter with verification information including:

- Cooper's first and last name, middle initial, and suffix "2";
- The last four digits of Cooper's social security number;
- Account number ending in 0104;
- Name of the original creditor as U.S. Bank;
- Date the account was opened with U.S. Bank as January 1, 2008;

2

- Date of sale of the account from U.S. Bank to PRA as June 17, 2015;

- Balance at time of sale as $3,177.19; and

- A statement that no interest or fees had been charged since the date of sale.

(Doc. 10, Exhibit 2). The letter stated that Cooper should contact PRA if he wanted to receive a history of payments that had been made since PRA acquired the account. The letter did not include a copy of the original agreement between Cooper and U.S. Bank as Cooper requested in his first response letter (Doc. 1, Exhibit 2). It did, however, include an identity theft affidavit that Cooper could have completed and returned in order to dispute that the debt belonged to him. Cooper says he did not return this affidavit because he did not want to provide personal information to PRA without further assurance of PRA's trustworthiness and the validity of the debt (Doc. 19 at 10).

### B.  Second Verification Request

On the same day, Cooper sent PRA a second letter requesting verification of the $3,177.19 debt (Doc. 1, Exhibit 4).[1] This letter stated that PRA had contacted Cooper by phone three times regarding the debt since receiving his request for verification on July 27, 2015, which Cooper specifically claimed was a violation of the FDCPA.[2] Cooper requested that PRA not call him again before verifying the debt. Cooper then listed the methods by which PRA should verify the debt, many of which were the same as in Cooper's first response letter except that he bolded and underlined requests for a copy

---

[1] Cooper says that he never received the August 10, 2015 letter from PRA (Doc. 26, ¶¶4-8), but his deposition states the opposite (*See* Doc. 23, Exhibit 5, at p. 45). Whether he actually received it is irrelevant since he received an identical letter from PRA on August 20, 2015 (Doc. 10, Exhibit 4).
[2] That PRA called Cooper before sending the first verification letter might well be a violation of the FDCPA. However, Cooper does not raise that claim in his complaint or motion for summary judgment.

3

of the original U.S. Bank agreement and a copy of the last billing statement that U.S. Bank sent to him.

PRA sent a letter to Cooper three days later, stating that the investigation of the dispute was complete and enclosing three Comerica Bank credit card statements as additional verification of the debt (Doc. 10, Exhibit 3). The first statement, dated April 2013, displayed a payment of $52.00. The second statement, dated January 2014, displayed a total balance of $3,177.19. The third statement, dated February 2014, displayed that the account was being charged off. PRA's letter did not explain the connection between Comerica Bank and U.S. Bank.

On August 20, 2015, PRA sent Cooper two letters. The first was a verification letter (Doc. 10, Exhibit 4) identical to the verification letter PRA sent on August 10, 2015 (Doc. 10, Exhibit 2). The second was a letter stating that because PRA had already responded to "a previous dispute substantially the same as your present dispute," it would conduct no further investigation into Cooper's dispute (Doc. 1, Exhibit 6-2).

### C. Third Verification Request

Shortly afterward, Cooper sent a letter to PRA requesting verification of the debt for the third time, stating that the information PRA had provided in its previous responses was insufficient to prove the validity of the debt (Doc. 1, Exhibit 5). Cooper emphasized that the only sufficient proof would be a copy of the original U.S. Bank contract that created the debt and one year of credit card statements.

On July 15, 2016, PRA sent to Cooper a letter (Doc. 1, Exhibit 6-1) identical to one sent on August 20, 2015 (Doc. 1, Exhibit 6-2), stating that PRA would not respond to a dispute that it already resolved.

### D. Credit Reporting

Between September 8, 2015, and August 16, 2016, PRA shared information regarding the debt with credit reporting agencies TransUnion, Equifax, and Experian. Each time it shared the information, PRA included a designation indicating that Cooper disputed the debt (Doc. 23, Exhibit 6). On August 16, 2016, PRA requested that the information be deleted from Cooper's credit report (Id. at ¶ 22).

### E. Dispute

Cooper filed a complaint on August 15, 2016 (Doc. 1) with allegations as described above.

## III. LEGAL STANDARD

Summary judgment will be granted if the moving party demonstrates that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *In re Dollar Corp.*, 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). In doing so, the Court "must view the evidence in the light most favorable to the non-moving party." *Emp'rs Ins. of Wausau v. Petrol. Specialties, Inc.*, 69 F.3d 98, 101 (6th Cir. 1995).

## IV. APPLICABLE LAW

### A. Verification

5

The FDCPA provides in relevant part that

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a)[3] that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains [and mails to the consumer] verification of the debt or a copy of a judgment, or the name and address of the original creditor.

15 U.S.C. § 1692g(b).

### B. Collection Fraud

The FDCPA also provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This includes, but is not limited to, false representation of "the character, amount, or legal status of any debt" as well as "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. §§ 1692e(2), (10). It also includes "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8).

Likewise, the Michigan Occupational Code forbids a debt collector from "[m]aking an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt or concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt." M.C.L. § 339.915(e). This language is mirrored in the Michigan Collection Practices Act, M.C.L. § 445.252(e).

### C. Simple Fraud

---

[3] This refers to a period of thirty days after the consumer receives a written notice from the debt collector containing information about the debt. *See* 15 U.S.C. § 1692g(a).

In order to sustain a simple fraud claim under Michigan common law, a plaintiff must show that:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the representation was made, the defendant knew that it was false, or made it recklessly, without knowledge of its truth, and as a positive assertion; (4) the defendant made it with the intention that the plaintiff should act upon it; (5) the plaintiff acted in reliance upon the representation; and (6) the plaintiff thereby suffered injury.

*Roberts v. Saffell*, 280 Mich. App. 397, 403 (2008).

## V.   DISCUSSION

### A.   Summary of Arguments of Parties

PRA says that its response to Cooper's request for verification of the debt fulfilled statutory requirements. It also says that the documentation it submitted was not fraudulent.

Cooper says that PRA's response to his request for verification of the debt did not fulfill statutory requirements, which means that the collection activities PRA undertook after sending its response violated the FDCPA verification provisions. Cooper also says that the verification documents PRA submitted were fraudulent, in violation of the FDCPA misrepresentation provisions, the MOC/MCPA, and Michigan tort law.

### B.   FDCPA Verification Requirement

The parties do not disagree about the contents of the documents PRA sent to Cooper in response to his verification requests. They only disagree about which legal standard should be applied to determine whether PRA met the verification requirements under 15 U.S.C. §1692g(b), which is not a question of fact.

#### i.   PRA Legal Standard

7

PRA relies on *Laues v. Roberts*, 2015 WL 1412631 (E.D. Mich. Mar. 25, 2015), in which the court applied the Sixth Circuit's approval of the FDCPA verification requirement:

> [V]erification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt. . . . [V]erification is only intended to eliminate the problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid. . . . There is no concomitant obligation to forward copies of bills or other detailed evidence of the debt.

*Id.* at *23-24 (quoting *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 783 (6th Cir. 2014)) (internal citations and quotation marks omitted). The *Laues* court further stated that the "baseline" for proper verification is that it "enables the consumer to sufficiently dispute the payment obligation." *Id.* at *24 (quoting *Haddad*, 758 F.3d at 785).

PRA says that it met this standard by providing Cooper with the amount of the debt owed, the name of the original creditor, and the name, address, and telephone number of the current creditor. It cites in support *Poulin v. Thomas Agency*, 760 F. Supp. 2d 151, 159 (D. Me. 2011) ("[C]onfirmation of the amount of the debt and the identity of the creditor, which is then relayed to the debtor—is sufficient.") and *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1173-74 ("[V]erification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed.") (quoting *Chaudry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999)).

### ii. Cooper Legal Standard

Cooper says that *Haddad* itself should control, as opposed to *Laues'* interpretation of *Haddad*. While *Haddad* supports the notion that the minimum verification required is that which will "enable the consumer to sufficiently dispute the payment obligation," *Haddad*, 758 F.3d at 785 (internal quotation marks omitted), it creates additional requirements for achieving this purpose that PRA did not cite:

> The verification provision must be interpreted to provide the consumer with notice of how and when the debt was originally incurred or other sufficient notice from which the consumer could sufficiently dispute the payment obligation. This information does not have to be extensive. It should provide the date and nature of the transaction that led to the debt, such as a purchase on a particular date, a missed rental payment for a specific month, a fee for a particular service provided at a specified time, or a fine for a particular offense assessed on a certain date.

*Id.* at 785-86.

Cooper also says *Haddad* "suggests" that the verification requirement include a "running account of the debt amount, a description of every transaction, and the date on which the transaction occurred." *Haddad*, 758 F.3d at 783 (quoting *Chaudry*, 174 F.3d at 406). While he notes that a running account would be impossible in this case since the account never existed, Cooper offers that a "running total of transactions" or a complete record of billing statements since the account's inception would have fulfilled this requirement (Doc. 19 at 7).

Further, Cooper admits that *Haddad* did not speak to a situation such as his own in which a debtor disputes the existence of a debt. In *Haddad*, the debtor knew he owed a debt to the creditor, but the creditor could not identify the source of a remaining $50 balance on the account. *Haddad*, 758 F.3d at 780. Here, Cooper says that no debt ever existed. Cooper asks the Court to "elevate" the *Haddad* standard to require proof of an original contract in his situation, relying on dicta from *Juarez v. Portfolio Recovery*

9

*Assocs., LLC*, 2015 U.S. Dist. LEXIS 105746, *7-8, 2015 WL 4764226 (N.D. Ill. Aug. 12, 2015) (granting summary judgment to PRA on FDCPA claims). Cooper also relies on *Juarez* and on a Consumer Financial Protection Bureau ("CFPB") consent judgment to argue that in the past, PRA has displayed a pattern and practice of contacting debtors without sufficient investigation of the existence of debts. Portfolio Recovery Associates, LLC, CFPB No. 2015-CFPB-0023, 2015 WL 5667141 (Sept. 09, 2015).

Finally, Cooper says that PRA's verification documents failed to meet the "least sophisticated consumer" standard from *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025 (6th Cir. 1992), which asks "whether the least sophisticated consumer would be deceived by a collection agency's letters." *Id.* at 1028 (internal quotation marks omitted). Cooper says that PRA's response was misleading because the verification letters referred to U.S. Bank, while the billing statements displayed a Comerica Bank logo. Cooper also says that because neither Comerica Bank, U.S. Bank, nor Elan Financial Services appeared in his June 9, 2015 credit report, he could not have known that PRA was referring to an account he owned. Cooper also cites inconsistent typeface, typographical irregularities, and an incorrect address as evidence that he should not have been expected to trust in the authenticity of the PRA documents.

### iii. Analysis

Under the plainest reading of *Haddad*, a debt collector must only provide information regarding "how and when the debt was originally incurred or other sufficient notice from which the consumer could sufficiently dispute the payment obligation." *Haddad*, 758 F.3d at 786. Exactly what is "sufficient" will depend on the facts of each case. *Id.* at 785.

Since Cooper claims that the debt never existed, PRA could meet the *Haddad* standard by giving Cooper information about how and when the debt came into existence. PRA's first verification letter from August 10, 2015 (Doc. 10, Exhibit 2) did just that by notifying Cooper that an account in his name had been opened with U.S. Bank on January 1, 2008. The letter also listed the account number and the last four digits of Cooper's social security number, and later provided billing statements from the account. This information was sufficient to allow Cooper to dispute the debt. Not only that, but PRA also expressly gave Cooper an opportunity to dispute the debt by enclosing an identity theft affidavit in two of its verification letters. There is no question that Cooper had the information necessary to complete these affidavits. PRA was therefore not required to provide a copy of an original contract because Cooper would not have needed an original contract in order to sufficiently dispute the debt.

Further, a debt collector is not required to independently verify the existence of a debt, but may rely on representations of the original creditor as to its existence. *Clark*, 460 F.3d at 1174 ("[Debt collectors] were entitled to rely on their client's statements to verify the debt. . . . Moreover, the FDCPA did not impose upon them any duty to investigate independently the claims."). *See also Chaudry*, 174 F.3d at 406 ("[V]erification only requires a debt collector to confirm with his client that a particular amount is actually being claimed, not to vouch for the validity of the underlying debt"); *Poulin*, 760 F. Supp. 2d at 160; *Ducrest v. Alco Collections, Inc.*, 931 F. Supp. 459, 462 (M.D. La. 1996); *Azar v. Hayter*, 874 F. Supp. 1314, 1317 (N.D. Fla. 1995), *aff'd*, 66 F.3d 342 (11th Cir. 1995); *Wittenberg v. Wells Fargo Bank, N.A.*, 852 F. Supp. 2d 731, 753 (N.D.W. Va. 2012), *aff'd sub nom. Wittenberg v. First Indep. Mortg. Co.*, 599 F.

App'x 463 (4th Cir. 2013). Thus, in order to comply with its FDCPA obligations, PRA did not have to prove to Cooper that the debt was valid before continuing collection activities.

Cooper's reliance on *Juarez* is misplaced; the decision makes no mention of an original contract requirement, and the "dicta" he referenced was merely the Plaintiff's argument, not the court's commentary. His reliance on a CFPB consent judgment is likewise misplaced because whether or not PRA acted inappropriately in the past does nothing to prove how it acted in this case.

PRA's verification documents also fulfilled the "least sophisticated consumer" standard. Failing to explain the business relationships between creditors and all of the names under which they do business does not amount to deception. Since Cooper's claim is that he never opened an account with either Comerica Bank, U.S. Bank, or Elan Financial Services, he would have had to dispute that the account belonged to him whether or not PRA provided an explanation. Further, even the least sophisticated consumer is still a reasonable person. *Wallace v. Diversified Consultants, Inc.*, 745 F.3d 1235, 1235 (6th Cir. 2014). *See also Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) ("[T]his Court has been careful not to conflate lack of sophistication with unreasonableness."). Cooper's claim that the account statements must have been entirely fabricated because they contained typographical irregularities and an incorrect address belongs in the category of "bizarre or idiosyncratic interpretations of collection notices" that the FDCPA does not condone. *Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 511 (6th Cir. 2007) (quoting *Jacobson v. Healthcare Fin. Servs., Inc.*, 434

F. Supp. 2d 133, 139 (E.D.N.Y. 2006), *aff'd in part, vacated in part, rev'd in part*, 516 F.3d 85 (2d Cir. 2008)).

Because PRA's letters and identity theft affidavits clearly communicated to Cooper that he could dispute the validity of the debt, they were sufficient under the FDCPA. *See Lamar*, 503 F.3d at 512 ("In reading the entirety of the document, the least sophisticated consumer would understand that she had a right to challenge the validity of the debt described in the notice and complaint, the errors notwithstanding."). Cooper could have contacted U.S. Bank or called the customer service phone number provided on the Comerica Bank statements to find out whether he had an account with either entity, regardless of whether he was already aware that such an account existed or whether the documents contained typographical or address errors.

### iv. Conclusion

Since the parties agree as to the content of the verification documents and PRA fulfilled its obligations under the FDCPA, PRA is entitled to summary judgment on the issue of verification.

### C. Collection Fraud

The parties disagree about whether the verification documents were fraudulent and so constituted an inaccurate or deceptive statement in violation of 15 U.S.C. § 1692e and M.C.L. § 339.915(e). Because the two statutes contain parallel language, claims that invoke both may be considered together. *Boone v. Portfolio Recovery Assocs., LLC*, No. 2:14-CV-12281, 2014 WL 5473082, at *3 (E.D. Mich. Oct. 27, 2014) (citing *Gamby v. Equifax Info. Servs. LLC*, 462 F. App'x 552, 556 (6th Cir. 2012));

*Lovelace v. Stephens & Michaels Assocs., Inc.*, No. 07-10956, 2007 WL 3333019, at *2 (E.D. Mich. Nov. 9, 2007).

### i. PRA's Evidence

PRA says that none of the documentation it sent to Cooper was fabricated or fraudulent. To support this claim, PRA has offered:

- Terms and conditions that applied to a U.S. Bank charge account displaying Cooper's name and address (Doc. 10, Exhibit 5A).

- Load data for the account (Doc. 10, Exhibit 7).[4]

- Monthly credit card statements from January 2012-February 2014 displaying Cooper's name and address (Doc. 23, Exhibit 2). These statements were supplied by U.S. Bank but had Comerica Bank branding. The statements from April 2013, January 2014, and February 2014 are identical to the ones PRA sent to Cooper as verification (Doc. 10, Exhibit 3).

- Bill of Sale and Affidavit of Sale showing sale of charged off accounts from U.S. Bank to PRA on June 17, 2015 (Doc. 10, Exhibits 8-9), as well as a declaration from the U.S. Bank Collections Manager stating that the account in question was among the accounts sold (Doc. 23, Exhibit 2, ¶12).

- A declaration from a U.S. Bank Agency Specialist explaining that U.S. Bank does business under the name of Elan Financial Services, and that Elan Financial Services issues credit cards with Comerica Bank branding (Doc. 10, Exhibit 5. *See also* Doc. 23. Exhibit 1).

---

[4] It is unclear whether U.S. Bank, PRA, or another entity created this data.

- Minnesota Secretary of State record showing that U.S. Bank does business under the name of Elan Financial Services (Doc. 10, Exhibit 6).

- A declaration from the U.S. Bank Collections Manager stating that the U.S. Bank account in question was closed in March 2009, but payments continued to be made until October 2014[5] (Doc. 23, Exhibit 2, ¶¶7-8). This declaration also stated that on November 9, 2012, Cooper requested that U.S. Bank change his address to 25701 West 12 Mount, Apt. 802, Southfield, Michigan 48034, and that statements sent to this address were not returned to U.S. Bank as undeliverable (*Id.*, ¶14).

- A fax from the United States Postal Service indicating that Cooper previously lived at 25701 West 12 Mount, Apt. 802, Southfield, Michigan 48034 (Doc. 23, Exhibit 3) and records from LexisNexis showing that Cooper was associated with that address (Doc. 23, Exhibit 4).

- Deposition testimony from Cooper establishing that Comerica Bank statements were sent to other valid addresses besides the "Mount" address, although Cooper denies ever receiving Comerica Bank statements (Doc. 23, Exhibit 5, pp. 76-82). Cooper verified that he did live at 25701 West 12 <u>Mile</u>, Apt. 802, Southfield, Michigan 48034.

### ii. Cooper's Evidence

In opposition, Cooper says that PRA's documents were fraudulent. To support this claim, he offers the following evidence:

---

[5] All other exhibits, including the statements attached to this exhibit, show the date of last payment as October 2013.

- Cooper's affidavit (Doc. 19, Exhibit A) attesting to the fact that Cooper never opened a charge card with Comerica Bank, U.S. Bank, or Elan Financial Services (Cooper confirmed this in his deposition, Doc. 23, Exhibit 5, pp. 72-73). Cooper also stated that he never made payments or received statements for such an account.

- Cooper's Transunion credit report from June 9, 2015 which did not show an account from Comerica Bank, U.S. Bank, or Elan Financial Services (Doc. 19, Exhibit H).

- A letter from U.S. Bank stating that the account in question was closed in March 2009 (accompanied by the argument that any statements bearing a date after 2009 were therefore fabricated) (Doc. 19, Exhibit M).

- Cooper's affidavit (Doc. 19, Exhibit A) attesting to the fact that he never lived on "Mount" Street, along with a statement from the United States Postal Service that 25701 W 12 Mount St is not a valid address (Doc. 19, Exhibit K) and letters to that address returned as undeliverable (Doc. 19, Exhibit L).

- Notations on the January 2014[6] Comerica Bank statement pointing out inconsistent typeface, Cooper's name as "misspelled," and abnormal spacing in the address line as compared to the June 2012[7] statement (Doc. 19, Exhibits I and J). Cooper also says that he always uses the Roman numeral "II" instead of the Arabic "2" when writing his name.

---

[6] PRA sent this statement to Cooper for debt verification on August 13, 2015.
[7] PRA provided this statement to Cooper during discovery.

- Comerica Bank documents addressed to a person other than Cooper displaying the name "Elan Financial Services" (Doc. 19, Exhibits F and G).

Cooper also says that PRA's declarants do not have personal knowledge of what they attested to because of PRA's deficient "pattern and practices" as described in the *Juarez* case and the CFPB consent order. Under the same reasoning, he very briefly claims that PRA did not exercise due diligence to ensure that the debt was valid. However, he provides no evidence regarding PRA's practices in this case.

Cooper finally says that PRA committed fraud by putting negative credit information onto Cooper's credit report. PRA responds by showing that PRA included the proper 15 U.S.C. § 1692e(8) "dispute" designation when it reported the information (Doc. 23, Exhibits 6 and 6A).

### iii. Analysis

Cooper's sworn statement that he never opened a charge account with U.S. Bank, Comerica Bank, or Elan Financial Services is insufficient to overcome summary judgment. The fact that Cooper never opened a charge account would be consistent with the explanation that PRA (and therefore U.S. Bank) forged the account documents. However, it would also be consistent with other explanations, such as that a third person stole Cooper's identity and opened the account in his name. Cooper has provided no evidence to suggest that PRA acted fraudulently other than a CFPB consent judgment which suggested that PRA exercised improper practices in the past.

Cooper's sworn statement that he never received the billing statements likewise does nothing to show that PRA acted fraudulently. The same is true of the fact that the "Mount" address is apparently not a valid postal address today, and the fact that no

credit account from U.S. Bank, Comerica Bank, or Elan Financial Services appeared on Cooper's credit report before PRA put it there. While these facts do reflect inconsistencies, Cooper's evidence fails to provide even one suggestion as to how they could be a result of fraudulent actions by PRA, as opposed to other possible explanations.

Cooper's other arguments are inconsequential. His name was not misspelled on the statements that used wide spacing in the address bar. Rather, the capital letter "I" was consistently pushed to the left in that typeface, often making it appear to combine with the letter before it. The rest of the typographical characteristics were consistent with the statements provided by U.S. Bank, which simply appears to have changed the formatting of its statements after 2012. Further, the Comerica Bank documents addressed to a different person were not of the same type as the statements sent to Cooper, so they are not suitable for comparison. PRA has also explained why the account continued to generate statements after the date of closing (Doc. 23, Exhibit 2, ¶¶7-8) and shown that its placement of information on Cooper's credit report was proper (Doc. 23, Exhibits 6 and 6A), neither of which Cooper has refuted.

Finally, just as for the verification provisions of the FDCPA, many courts have held that debt collectors do not need to independently investigate the validity of a debt to comply with 15 U.S.C. § 1692e. *Smith*, 953 F.2d at 1032 ("The district court correctly determined, however, that the statute does not require an independent investigation of the debt referred for collection.") (internal quotation marks omitted); *Wittenberg v. Wells Fargo Bank, N.A.*, 852 F. Supp. 2d 731, 753 (N.D.W. Va. 2012), *aff'd sub nom. Wittenberg v. First Indep. Mortg. Co.*, 599 F. App'x 463 (4th Cir. 2013) ("[T]he FDCPA

does not require a debt collector to engage in an independent investigation of the debt referred for collection." (quoting *Sayyed v. Wolpoff & Abramson, LLP,* 733 F.Supp.2d 635, 646 (D.Md. 2010)). Rather, debt collectors may reasonably rely on representations of the original creditor. *Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383, 392 (D. Del. 1991) ("Generally, a debt collector may reasonably rely upon information provided by a creditor who has provided accurate information in the past."). *See also Bleich v. Revenue Maximization Grp., Inc.*, 233 F. Supp. 2d 496, 500 (E.D.N.Y. 2002) ("[A debt collector] . . . was entitled to rely, in the first instance, on the Hospital's representation that the debt was valid."); *Ducrest*, 931 F. Supp. at 462 ("[D]efendant relied on the information provided to it by Broadmoor Plantation Apartments in demanding payment of this debt. Plaintiff's claim . . . has no merit because she has not shown that any misrepresentation of the amount of the debt claimed was knowing or intentional."). Thus, Cooper's bare assertion that PRA did not exercise due diligence, unsupported by any evidence of unreasonable reliance, also fails.

### iv.  Conclusion

Because Cooper has failed to provide evidence that PRA's fraudulent activity caused the inconsistencies present in this case, PRA is entitled to summary judgment on the issue of collection fraud.

### D. Simple Fraud

Because Cooper has failed to provide evidence that PRA made a false representation, PRA is also entitled to summary judgment on Cooper's simple fraud claim.

SO ORDERED.

s/Avern Cohn  
AVERN COHN  
UNITED STATES DISTRICT JUDGE

Dated: September 15, 2017  
   Detroit, Michigan